UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Employers Mutual Casualty Company,

        Plaintiff,

v.                                                    MEMORANDUM OPINION
                                          AND ORDER
                                         Civil No. 04-3839

Industrial Rubber Products, Inc.,
DaimlerChrysler Insurance Company,
and Sentry Insurance Company,

        Defendants.

_____

        Timothy P. Tobin and Sarah M. MacGillis, Gislason & Hunter LLP, for and on behalf of Plaintiff Employers Mutual Casualty Company.

        Nicholas Ostapenko and Paul W. Wojciak, Johnson, Killen & Seiler, P.A., for and on behalf of Defendant Industrial Rubber Products, Inc.

        Steven L. Theesfeld, Yost & Baill, LLP, for and on behalf of Defendant DaimlerChrysler Insurance Company.

_____

        This is a declaratory judgment action in which Plaintiff Employers Mutual Casualty Company ("Employers") seeks a declaration that it does not have a duty to defend or indemnify its insured, Industrial Rubber Products, Inc. ("IRP") in an underlying lawsuit involving IRP and DaimlerChrylser Insurance Company ("Daimler") and Sentry Insurance Company ("Sentry"), because the claim

1

involved in the underlying lawsuit is excluded pursuant to the pollution exclusion contained in Employers' insurance policy.

Before the Court are cross motions for summary judgment.

Factual Background

IRP is in the business of taking new or used industrial parts and cleaning them of foreign debris, then coating them with a protective outer material, such as rubber, paint, polyurea, and/or polyurethane. To remove the parts of foreign debris, IRP uses a number of methods. One method is referred to as steel grit blasting, which involves blasting the part with a fine steel grit in an enclosed area that has a waffle floor and a wet vac dust collector. Two processes are used to collect the residue, a grit recirculation system and a wet vac dust collection unit. IRP alleges that it has been conducting steel grit blasting for over 40 years, and has not received any complaints about emissions until the summer of 2003.

At that time, a nearby business, the Hibbing Chrysler Center ("HCC") claimed that its vehicle inventory was damaged by particulate from IRP's blasting operations. In a letter dated August 1, 2003, Daimler notified IRP that "fall-out" from IRP's operations damaged HCC's vehicles. IRP inspected the vehicles, and found nothing different than the employee's vehicles and IRP or other dealerships. A complaint was made to the MPCA, who later conducted a site visit. The inspector ultimately concluded that a hazardous waste issue did not exist.

HCC sent a cease and desist letter to IRP in August 2003, and informed IRP that a lab analysis was conducted which identified IRP as the source of the damage.  IRP asserts, however, that such report, prepared by Engineering and Fire Investigations ("EFI"), does not identify it as the source, and that said report identified the foreign material as phenolic resin, which is not a by-product of IRP's operations.  EFI prepared a follow up report which stated that the foreign material also included polyvinyl alcohol, which is also not a by-product of IRP's operations.  It is, in fact, used in film for automotive windows and car wax.

IRP retained Twin Ports Testing, Inc. ("Twin Ports") to assess IRP's operations and to analyze the reports of EFI.  Twin Ports concluded that the by-product of IRP's operations are not likely candidates for causing the alleged damage to HCC's vehicles.

Daimler retained Legend Technical Services, Inc. ("Legend") to take samples from HCC vehicles and analyze them.  Legend concluded in its report that the particulate at issue is comprised of metallic iron and iron oxide, and that IRP is the source of the particulate.

IRP tendered a defense to its insurer, Employers, as soon as HCC issued its first complaints, and Employers agreed to defend under a reservation of rights.  Employer's has now commenced this action, seeking a declaration that the underlying claim by HCC is excluded pursuant to the pollution exclusion provision

of the relevant commercial general liability ("CGL") policy.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

The CGL policy at issue in this case provides for coverage for bodily injury or property damage that is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The CGL policy also includes an absolute pollution exclusion clause which excludes coverage for:

> "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>> at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."

"Pollutant" is defined in the CGL policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

The duty to defend arises "if any part of the claims asserted against [the insured] in the underlying case 'arguably' falls within the scope of coverage," and the burden of showing that all parts of the cause of action clearly fall outside the scope of coverage is on the insurer.  <u>Comstat Corporation v. St. Paul Fire and Marine Insurance Company</u>, 246 F.3d 1101, 1105 (8th Cir. 2001).  IRP asserts that the duty to defend is triggered as the underlying claim, which involves an allegation of property damage caused by an occurrence in the coverage territory, is arguably covered by the CGL policy.  Employers responds that there is no coverage because the underlying claim, if proven, is excluded pursuant to the absolute pollution exclusion clause.

IRP argues that Employers has failed to show that the pollution exclusion applies because IRP has produced extrinsic evidence which shows that the particulate at issue did not originate from IRP's property.  Employers responds

that IRP's liability defenses are irrelevant to the determination of coverage. Rather, that determination is made by comparing the allegations in the complaint with the language of the CGL policy.

With respect to this issue, the Court agrees that coverage determination is made with respect to the claims in the underlying complaint. "In assessing whether an insurer has a duty to defend, the court must focus on the claim and whether its elements fit within the exclusion." Ross v. Briggs and Morgan, 540 N.W.2d 843 (Minn.1995)(finding the lower court erred by focusing on some of the conduct being asserted to prove the claim, rather than the claim asserted).[1] The Court will thus not take into consideration the extrinsic evidence concerning the source of the particulate.

The parties agree that the CGL policy must be interpreted pursuant to Minnesota law.  Under Minnesota law, "when interpreting an insurance contract, words are to be given their natural and ordinary meaning and any ambiguity regarding coverage is construed in favor of the insured." American Family Insurance Company v. Walser, 628 N.W.2d 605, 609 (Minn. 2001).

With respect to pollution exclusion provisions, Minnesota courts have similarly construed such provisions according to its non-technical, plain meaning.

---

[1] Even if the Court were to take into consideration the extrinsic evidence that IRP was not the source of the particulate, such fact would establish no liability on the part of IRP, which in turn would signal the end of Employers' duty to defend or indemnify.  See, State Farm Fire & Casualty Co. v. Williams, 355 N.W.2d 421, 424-425 (Minn. 1984).

Board of Regents of the University of Minnesota v. Royal Insurance Company of America, 517 N.W.2d 888 (Minn. 1994); Auto-Owners Insurance Company v. Hanson, 588 N.W.2d 777 (Minn. Ct. App. 1999).  In Royal, the court noted that the pollution exclusion before excluded coverage of "irritants" and "contaminants".  The court then concluded that it would be "a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, were not an irritant."  Royal, 517 N.W.2d at 892.  Similarly, in Auto-Owners, the court of appeals held that lead in paint fell within the policy's definition of pollutant, which was defined as an "irritant or contaminant".  Auto-Owners, 588 N.W.2d at 779.  See also, American States Insurance Company v. Technical Surfacing, Inc., 50 F. Supp. 2d 888 (D. Minn. 1999)(the court construed the pollution exclusion provision at issue under its plain meaning, and found that xylene fumes that escaped while the insured was using a compound sealing on a floor, was a pollutant, as xylene is listed as a pollutant under the Federal Clean Air Act, 42 U.S.C. § 7412(b)(1995)).

  Despite the recognition that the Minnesota Supreme Court has adopted the ordinary or plain meaning approach with respect to the scope of a pollution exclusion provision, the court of appeals in Auto-Owners noted that "there must be a limit to the construction of what constitutes an irritant or contaminant, or the exclusion renders the policy illusory."  Id. at 781.  See also, American States,

50 F. Supp.2d at 890 (acknowledging that failure to limit the breadth of the pollution exclusion could exclude coverage beyond reason).

IRP acknowledges that Minnesota courts have, to date, broadly applied the pollution exclusion, but argue that those cases involved substances that have an "infamous reputation" in the legal community; i.e. asbestos and lead paint. Since this case does not involve such substances, IRP urges this Court to find that the Minnesota cases that have broadly applied the pollution exclusion are distinguishable.

In a recent case involving the interpretation of identical pollution exclusion language, this Court found that under Minnesota law, the absolute pollution exclusion "is unambiguous and encompasses not only traditional environmental pollution, but also incidents arising out of ordinary business activities." Continental Casualty Company v. Advance Terrazzo & Tile Company, Inc., 2005 WL 1923661, *6 (D. Minn. Aug. 11, 2005).

Applying the plain meaning approach to the definition of pollutant contained in the CGL policy - any solid, liquid, gaseous or thermal irritant or contaminant - leads to the conclusion that the particulate at issue are pollutants. The Complaint references an "airborne contaminant" in nine separate paragraphs and even IRP's testing firm referred to the particulate as contaminants. MacGillis Affidavit, Ex. M. Employers also notes that the chemicals comprising the

particulate as identified by Legend, metallic iron and iron oxide, are regulated as "airborne contaminants" by OSHA. See 29 C.F.R. § 1926.55, Appendix A; 29 C.F.R. § 1910.1000 Air Contaminants; MacGillis Aff., Ex. O, p. 4.

IRP asserts that the particulate at issue are not pollutants as defined in the CGL policy because metallic iron and iron oxide are not listed as pollutants under the Clean Air Act, 42 U.S.C. § 7412(b). There is no case law, however, that supports the argument that a pollutant, as that term in used in an insurance policy, is defined according to the Clean Air Act. In fact, cases in other jurisdictions have found that metallic compounds are pollutants, without reference to the Clean Air Act. See, Titan Corp. v. Aetna Casualty & Surety Co., 22 Cal. App. 4th 457, 462, n.1, 27 Cal. Rptr.2d 476 (Cal. Ct. App. 1994)(identifying contaminants as fine grain oxides of metal); Monarch Greenback LLC v. Monticello Ins. Co., 118 F. Supp.2d 1068, 1079 (D. Id. 1999)(finding mine tailings, which include traces of metals including iron, are pollutants as defined by the pollution exclusion clause).

Finally, IRP argues that in the event the Court were to find that the particulate at issue are pollutants as defined in the CGL policy's absolute pollution exclusion clause, such interpretation would render the CGL policy illusory as it would preclude coverage from a large part of IRP's business.

Under Minnesota law, the doctrine of illusory coverage is "best applied . . .

9

where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." Jostens, Inc. v. Northfield Insurance Company, 527 N.W.2d 116, 119 (Minn. Ct. App. 1995). See also, Kabanuk Diversified Investments, Inc. v. Credit General Ins. Co., 553 N.W.2d 65, 73 (Minn. Ct. App. 1996)(rejecting illusory coverage argument because no evidence was presented to show that a premium was specifically allocated to type of coverage at issue).

In this case, the CGL policy afforded coverage for a number of perils, such as a slip and fall, damage to property or products liability. However, there is no evidence in the record which shows that IRP paid a premium that was specifically allocated to the type of claim asserted by HCC. Accordingly, the Court must reject IRP's argument that application of the absolute pollution exclusion clause renders the CGL policy illusory.

Attorney's Fees

Employers filed a separate motion seeking reimbursement of all defense costs expended on behalf of IRP in defending it in the Hibbing litigation. In support of its motion, Employers cites to Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp.1169, 1171-1172 (D. Minn. 1996) in which this Court held that where an insurer clearly indicated its desire to reserve its right to later seek reimbursement for attorney's fees and costs, and the insured accepted the defense

provided without objection to such reservation of rights, the insured may seek reimbursement for reasonable fees expended when it has been determined that the insurer had no duty to defend or indemnify.  In reaching this decision, this Court relied on California law, as the Minnesota courts had not yet addressed this issue.  <u>Knapp</u>, at 1171.  To date, the Minnesota courts remain silent on this issue.  Since <u>Knapp</u> was decided, however, the Eighth Circuit has had the opportunity to address whether an insurer may seek reimbursement of defense costs.

In <u>Liberty Mutual Insurance Company v. FAG Bearings Corporation</u>, the Court determined that the absolute pollution exclusion barred coverage.  153 F.3d 919, 923 (8th Cir. 1998).  In light of the Court's finding of no coverage, the insurer argued it was entitled to reimbursement of all defense costs paid.  Applying Missouri law, the Court noted:

> Although the parties disputed whether the claims were excluded from coverage by operation of the pollution exclusion clause, any uncertainty as to such coverage should be resolved in [the insured's] favor.  Therefore [the insurer] remained obligated to defend [the insured] so long as there remained any question as to whether the underlying claims were covered by the policies.  Upon such determination that the  . . . claims . . . were excluded from coverage, the district court properly concluded that [the insurer's] duty to defend [the insured] in this action expired.  Because we conclude that [the insurer] had a duty to defend [the insured] until such determination was made, we reject [the insurer's] argument that it is entitled to reimbursement of defense costs.  <u>Id.</u> at 924.

<u>See</u> <u>also</u>, <u>General Agents Insurance Company of America v. Midwest Sporting Goods Company</u>, 215 Ill.2d 146, 828 N.E.2d 1092, 293 Ill.Dec. 594 (Ill.

11

2005)(court held it would follow the minority rule which refuses to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract).

While the Eighth Circuit's decision in <u>Liberty Mutual</u> was made pursuant to the law of Missouri as to the scope of the duty to defend, this Court recognizes that Minnesota law has interpreted the duty to defend consistent with Missouri's interpretation.  <u>See</u> <u>eg.</u> <u>Brown v. State Auto & Casualty Underwriters</u>, 293 N.W.2d 822, 825-26 (Minn. 1980)(duty to defend triggered when any part of the claim arguably falls within coverage of policy).  This Court will therefore follow the reasoning of the Eighth Circuit in <u>Liberty Mutual</u> and find an insurer is not entitled to the reimbursement of defense costs expended prior to the determination of coverage, unless specifically provided for in the insurance policy.

In this case, Employers did include in its reservation of rights letter a right to seek reimbursement of defense costs.  However, IRP did not explicitly respond to this reservation, and the CGL policy is silent as to Employers' right to seek reimbursement.  Accordingly, the Court will deny Employers' request for reimbursement of defense costs expended prior to the date of this Order.

IT IS HEREBY ORDERED THAT:

1. Employers Motion for Summary Judgment [Docket No. 22] is GRANTED.

2. IRP's Motion for Summary Judgment [Docket No. 26] is DENIED.

3. Employers' Supplement Motion for Summary Judgment and Reimbursement of Defense Costs [Docket No. 34] is DENIED as to the request for reimbursement of Defense Costs.

4. The claims at issue in the Hibbing Litigation are not covered and/or are excluded under the CGL Policy, and Employers has no duty to defend or indemnify IRP for any of the claims at issue in the Hibbing Litigation.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: February 23, 2006

                                  s/ Michael J. Davis
                                  Michael J. Davis
                                  United States District Court